UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| GENERAL AGENTS INSURANCE COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:02-CV-350 ) ) Judge Curtis L. Collier ) |
| THE MANDRILL CORPORATION, INC., | ) ) ) |
| Defendant. | ) |

## **M E M O R A N D U M**

Before the Court are motions filed by both parties. Plaintiff General Agents Insurance Company, Inc. ("GAINSCO" or "Plaintiff") has filed a motion for summary judgment (Court File No. 69). Defendant The Mandrill Corporation, Inc. ("Mandrill" or "Defendant") filed a response to Plaintiff's motion and also filed its own motion for relief from order under Fed. R. Civ. P. 60, essentially a motion to reconsider the Court's prior ruling on its motion for summary judgment (Court File No. 70). The parties filed numerous briefs and exhibits in relation to these motions (Court File No. 68, exhibits to Court File No. 69, Court File Nos. 71, 72, 73, 80 and exhibits thereto).

For the following reasons, the Court will **GRANT** Plaintiff GAINSCO's motion for summary judgment (Court File No. 69) and will **DENY** Defendant Mandrill's motion for relief from order (Court File No. 70).

**I.     RELEVANT FACTS**

The Court fully stated the facts of this case in its prior memorandum on Mandrill's motion for summary judgment (Court File No. 40). The Court here will outline only those facts relevant to the current motions.

Mandrill is a Tennessee corporation engaged in the demolition and excavation business with its principal place of business in Tennessee (Court File No. 2, Answer ¶ 2). GAINSCO issued a commercial general liability policy to Mandrill with a policy period commencing on September 6, 2000, and terminating on September 6, 2001 (Court File No. 24, Exh. A). Through the policy, GAINSCO agreed to pay the sums Mandrill became legally obligated to pay as damages because of "bodily injury" to which the insurance applied and to defend any "suit" seeking those damages (*Id*. at Section I.A.1.a.). The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" (*Id.* at Section V.3). The policy included a variety of exclusions, one of which the Court found relevant to this case, Employer's Liability. Relevant portions the policy include the following provisions:

> **2. Exclusions.**
> This insurance does not apply to:
> **a. Expected or Intended Injury** . . . .
> **b. Contractual Liability** . . .
> **c. Liquor Liability** . . . .
> **d. Workers Compensation and Similar Laws** . . .
> **e. Employer's Liability**
> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
>     (a) Employment by the insured; or
>     (b) Performing duties related to the conduct of the insured's business.

(*Id.* at Section I.2).

On October 9, 2000, Mandrill began demolition of the T.H. Payne Building at 819 Market Street in Chattanooga, Tennessee pursuant to a contract with the Chattanooga Land Company, LLC

(Court File No. 24, Exh. B; Court File No. 24, Exh. [unmarked], Deposition of James Mathis on July 24, 2003 ("2003 Mathis Dep.") at 10-11). On January 17, 2001, Mandrill and Chattanooga Land Company entered in to an addendum to their contract for the selective demolition of the Burchay's building (Court File No. 29, Exh. B). Part of the Burchay's work involved Mandrill, at Chattanooga Land Company's request, removing plaster from a party wall shared by an adjacent landowner, to expose the underlying brick (2003 Mathis Dep. at 11-13; Court File No. 29, Exh. [unmarked], Statement of James Franklin Mathis on April 23, 2001 ("2001 Mathis Stmt.") at 19). On February 5, 2001, the party wall collapsed, injuring two Mandrill workers and killing a third as they removed the plaster from the wall (*Id.* at 19-20). These workers were Johnny Mathis, Robert Wynn, and Scott Wheeler (Court File No. 4, Amended Complaint, ¶ 10).

Mandrill's workers' compensation insurance policy was cancelled effective February 4, 2001, pursuant to a court order the insurance company providing the coverage was insolvent and must be liquidated (2001 Mathis Stmt. at 61; Court File No. 29, Exh. E). Mandrill obtained workers' compensation insurance coverage through another company, but not until February 7, 2001 (2003 Mathis Dep. at 43).

After the wall fell at Mandrill's worksite on February 5, 2001, Johnny Mathis filed a complaint against Mandrill and Chattanooga Land Company in Circuit Court of Hamilton County seeking compensation for personal injuries resulting from their negligence (Court File No. 29, Exh. M). Walter E. Grantham, administrator of the estate of Scott Wheeler, filed a complaint in Circuit Court for Hamilton County against Mandrill and Chattanooga Land Company, asserting a claim for workers' compensation benefits or in the alternative for wrongful death due to the defendants' negligence (Court File No. 29, Exh. K). Robert Wynn filed a complaint against Mandrill and

Chattanooga Land Company in the Chancery Court of Hamilton County, seeking to recover workers' compensation benefits and alternatively alleging Mandrill was liable for his damages under common law negligence (Court File No. 29, Exh. J).

GAINSCO issued a reservation of rights notice to Mandrill dated March 6, 2001. This letter states

> Nothing which this insurer may have done or may do hereafter in connection with the investigation or defense of any matters arising out of this incident, or in connection with the handling of any claim or litigation through the courts, including investigation and/or negotiations for settlement, shall be construed or held as a waiver of any of the rights or defenses of this insurer under the above-referenced policy . . .

(Court File No. 73, Exh. B, Sect. V). Then, on February 15, 2002, GAINSCO issued a letter to Mandrill declining to defend or indemnify Mandrill for the claims that were brought by Robert Wynn or on behalf of Scott Wheeler (Court File No. 24, Exh. H). GAINSCO relied on exclusions within the policy and its opinion the claims were not covered by the policy (*Id.*). On November 20, 2002, GAINSCO filed this declaratory judgment action (Court File No. 1).

This action was put on hold many times while the underlying state-court actions proceeded. On May 26, 2005, GAINSCO and others participated in mediation of the claims of Walter E. Grantham, administrator of the estate of Scott Wheeler, Robert Wynn, and Johnny Mathis against Mandrill and Chattanooga Land Company (Court File No. 71 at 2). The individuals' claims were settled, and GAINSCO contributed $25,000 to the $90,000 total settlement of the claims of the estate of Scott Wheeler; $20,000 towards the $110,000 total settlement of the claims of Johnny Mathis, and $15,000 towards the $50,000 total settlement of the claims of Robert Wynn. Those actions have since been voluntarily dismissed with prejudice.

## II.   MOTION FOR SUMMARY JUDGMENT

In this declaratory judgment action, GAINSCO and Mandrill bring claims against each other to determine whether the policy GAINSCO issued to Mandrill applies to underlying claims brought in state court by two men who were injured and the estate of a third man who was killed while they were working for Mandrill (*See* Court File Nos. 2, 4).

The Court previously, in ruling on Mandrill's motion for summary judgment (Court File No. 23) held GAINSCO had no duty to defend Mandrill in the underlying state-court suits but withheld judgment on GAINSCO's duty to indemnify, finding genuine issues of material fact on that issue (Court File No. 40).  Thus the only issue now remaining in this case is GAINSCO's duty to indemnify Mandrill in these suits.

GAINSCO in its motion states since the Court's ruling on summary judgment, the underlying state-court suits have been fully compromised and dismissed with prejudice without Mandrill incurring a loss or making a payment (Court File No. 69 at 2).  Therefore, GAINSCO argues, no claims remain against which it might have a duty to indemnify Mandrill and it must prevail as a matter of law on the indemnification issue (*id*. at 3).

Mandrill in its response to GAINSCO's motion for summary judgment concedes, based on GAINSCO's settlement of all underlying state-court claims on behalf of Mandrill, the issue of the duty to indemnify is now moot (Court File No. 70, p. 1).  Mandrill agrees there are no remaining issues to be tried and requests this matter be dismissed (*id*. at 2).

As the parties are in agreement the underlying issues have been resolved, the Court will **GRANT** GAINSCO's motion for summary judgment (Court File No. 69).

**III. MOTION FOR RELIEF FROM PRIOR ORDER**

Mandrill now moves the Court to reconsider its prior summary judgment ruling pursuant to Fed. R. Civ. P. 60 (Court File No. 70 at 2). That opinion was issued on February 19, 2004. The Court would note Mandrill filed a similar motion on May 27, 2004, shortly after the Court issued its prior summary judgment order (Court File 44). The Court denied this motion because the Court concluded Mandrill had not shown any exceptional circumstance such that extraordinary relief was warranted (Court File Nos. 45, 46). Mandrill bases its current motion on GAINSCO's subsequent "indemnification" in the underlying state-court suits, arguing this action renders the issue of GAINSCO's duty to defend ripe for reconsideration.

**A.     Standard of Review**

Under Rule 60 of the Federal Rules of Civil Procedure, a court has discretion to provide relief from a judgment or order upon a showing of cause. Rule 60(a) addresses clerical errors. Rule 60(b) addresses all other bases for reconsideration:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). Any Rule 60(b) motion "shall be made within a reasonable time," and motions made pursuant to subsections (1) through (3) must be made "not more than one year after the judgment, order, or proceeding was entered . . ." Fed. R. 60(b).

With regard to the catch-all provision of Rule 60(b)(6), the United States Court of Appeals

6

for the Sixth Circuit has stated:

> Rule 60(b)(6) should apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Courts, however, must apply subsection (b)(6) only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present."

*Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citations omitted).

Motions to reconsider under Rule 60(b) are "opportunit[ies] for [the district court] to correct manifest errors of law or fact and to review newly discovered evidence or to review a prior decision when there has been a change in the law." *United States v. Davis*, 939 F. Supp. 810, 812 (D. Kan. 1996). Rule 60(b) motions are addressed to the sound discretion of the district court, which must balance the ends of justice with public interest in the finality of the court's decisions. *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 683 (6th Cir. 1999); *Aetna Cas. & Sur. Co. v. Home Ins. Co.*, 882 F. Supp. 1355, 1356 (S.D.N.Y. 1995). Such motions seek extraordinary judicial relief and can be granted only upon a showing of exceptional circumstances. *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000). "[A] Rule 60(b) motion is not a substitute for an appeal." *Kai Wu Chan v. Reno*, 932 F. Supp. 535, 539 (S.D.N.Y. 1996).

### B. Discussion

Mandrill argues GAINSCO, despite its denials of any duty of indemnification, did in fact indemnify Mandrill in the underlying actions by contributing to settlement of those actions on Mandrill's behalf. Because GAINSCO essentially acceded to coverage for those claims by these actions, Mandrill argues, GAINSCO should reimburse Mandrill for defense costs Mandrill incurred in protecting its own as well as GAINSCO's interests.

Mandrill cannot rely on subsections (1) through (3) of Rule 60(b), as more than a year had

7

passed since the Order was entered on February 19, 2004[1] when Mandrill filed the present motion on November 3, 2005 (Court File No. 70). Mandrill has not shown the judgment is void, the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application. Fed. R. Civ. P. 60(b)(4)-(5). Further, as the Court will analyze below, Mandrill has not presented any other persuasive rationale that would warrant relief from the Order denying its motion for summary judgment. Fed. R. Civ. P. 40(b)(6). Therefore, the Court will deny Defendant Mandrill's current motion for relief from its prior order because it has not met any of the first five numbered clauses of Rule 60(b) and it has not shown this to be an exceptional circumstance where such extraordinary relief is warranted under Rule 60(b)(6). *Olle*, 910 F.2d at 365.

Mandrill presents four arguments in its motion which the Court will consider in turn.

### 1. Duty to Defend Broader than Duty to Indemnify

The Court previously considered Mandrill's first argument, based on the general principle an insurer's duty to defend is broader than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (*see* Court File No. 45 at 3-4). The Court rejected Mandrill's argument the Court's finding of a question of fact on the indemnification duty triggered the duty to defend, because the Court's holding on the duty to defend was compelled by the insurance policy itself, and the general principle the duty to defend is broader than the duty to indemnify did not require a contrary holding (*id.* at 4).

---

[1] Even being most generous to Mandrill, and using the date on which the Court entered its Order denying Mandrill's motion to reconsider its summary judgment ruling, June 15, 2004 (*see* Court File No. 45), Mandrill waited far more than a year to file the present motion.

8

Mandrill now reiterates this argument by stating GAINSCO's "indemnification" of Mandrill in its settlement of the underlying state-court actions should trigger the broader duty to defend (Court File No. 70 at 6-7). The Court would note GAINSCO denies its actions in settling the suits was pursuant to any duty to indemnify Mandrill; GAINSCO states it merely paid "slightly more than 'nuisance value' of the individual claims in order to avoid the time, effort and expense that it, Mandrill and the Court would incur if a trial were to take place [on the issue of GAINSCO's duty to indemnify Mandrill]" (Court File No. 71 at 3).

Mandrill has not put forward any argument that addresses the basis of the Court's holding on the duty to defend, i.e., the employer liability exclusion in the policy GAINSCO issued to Mandrill (Court File No. 40 at 11-12). Therefore, Mandrill cannot prevail based upon this argument. . GAINSCO's subsequent actions in settling the underlying state-court claims did not trigger its duty to defend under the policy.

### 2. Policy Does Not Provide for Apportionment of Coverage

Mandrill next argues a close examination of the policy at issue shows it does not provide for partial coverage of defense costs where the insurer (GAINSCO) elects to voluntarily settle potential claims (Court File No. 70 at 7). Therefore, Mandrill argues, because GAINSCO elected to voluntarily settle the claims in the underlying state-court suits, the insurance policy dictates GAINSCO must pay Mandrill's defense costs. This is an interesting argument, but one that is not supported by the language of the policy itself. The applicable portion of the policy reads:

> Coverage A. Bodily Injury and Property Damage Liability
>     1. Insuring Agreement
>         a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion

> investigate any "occurrence" and settle any claim or "suit" that may result. But:
> (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C . . .

(Court File No. 24, Exh. A, Section I). While it is true the insurance policy does not contemplate apportionment of defense costs, it also does not indicate the duty to defend will arise every time a settlement is paid by GAINSCO. Rather, GAINSCO "will have the right and duty to defend any 'suit' seeking those damages" (*id.*). That duty to defend is subject to the Exclusions section of the policy, outlining situations in which the insurance policy does not apply, quoted above in the Facts section (*id.* at Section V). It was the employer's liability exclusion that dictated the Court's previous holding GAINSCO had no duty to defend these suits; Mandrill's argument based solely on the coverage section of the policy is faulty because it fails to acknowledge the exclusions to that coverage.

Because Mandrill's argument about apportionment of coverage is inconsistent with the insurance policy itself, Mandrill cannot prevail on this ground.

### 3. Quantum Meruit

Mandrill next argues under a theory of quantum meruit, GAINSCO has enjoyed the benefit of Mandrill's defense efforts in the underlying state-court cases and should be required to reimburse Mandrill for those efforts (Court File No. 70 at 8-9). Mandrill asserts its defense of these actions resulted in GAINSCO's ability to negotiate a much smaller settlement than if Mandrill had failed to defend the suit, a default judgment had been entered against Mandrill, and the plaintiffs in the underlying suit had sued GAINSCO on the policy to recover that judgment (*see* Court File No. 24,

10

Exh. A, Section IV.3, providing for suit against the insurer to obtain a settlement or judgment obtained against an insured). Mandrill argues GAINSCO benefitted from its retention of counsel, filing of an answer, assertion of a defense to the allegations, and participation in discovery, which prevented a large default judgment from being entered upon which GAINSCO may have been liable. Mandrill further argues if an insurer is allowed to deny defense costs then settle the claim based on the insured's defense efforts, this would "open the door" for insurers to routinely deny a duty to defend a claim solely for the purpose of avoiding defense costs while benefitting from the insured's defense expenditures (Court File No. 70 at 9).

GAINSCO responds Mandrill actually requested GAINSCO take part in mediation of the underlying suits and also Mandrill benefitted from GAINSCO's participation in mediation. GAINSCO posits its participation enhanced the possibility of settlement of the underlying claims against Mandrill and also its contributions to the settlement of those claims clearly benefitted Mandrill (Court File No. 73 at 2). GAINSCO argues it would be inequitable for Mandrill to benefit doubly by GAINSCO being required to bear the burden of its defense costs. Mandrill argues GAINSCO also benefitted from settlement of the underlying claims because it received releases from any further claims by those underlying claimants and was not merely acting altruistically in these settlements (Court File No. 80). The Court finds these arguments inapposite to its analysis.

In Tennessee, a quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another if the following circumstances are shown:

>  (1) There is no existing, enforceable contract between the parties covering the same subject matter;
>  (2) The party seeking recovery proves that it provided valuable goods or services;
>  (3) The party to be charged received the goods or services;

11

(4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 198 (Tenn. 2001) (*citing Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)).

The parties have not contended "there is no existing, enforceable contract between the parties covering the same subject matter"; their insurance contract, evidenced by the insurance policy neither party argues is unenforceable, specifically covers the subject matter of provision of a defense to Mandrill in the underlying cases. The fact Mandrill may find this provision in the contract unfair in these circumstances does not, without meeting the required elements set out above, make this a proper topic for a quantum meruit claim, and Mandrill cannot prevail on this argument.

### 4. Waiver

In its rebuttal brief, Mandrill for the first time raises the issue of waiver (Court File No. 72 at 2-5). Mandrill argues GAINSCO's settlement of the underlying suits without reservation of the right to decline coverage amounts to a waiver of that right.

There is a "long-standing rule in Tennessee that any contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent." *Gaston v. Tennessee Farmers Mut. Ins. Co.* 120 S.W.3d 815, 819 (Tenn. 2003) (*quoting Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 13 (Tenn.1991); *citing Rutherford v. Tennessee Farmers Mut. Ins. Co.*, 608 S.W.2d 843, 846 (Tenn.1980)). Tennessee defines a waiver as an "intentional relinquishment of a known right, or such conduct as warrants an inference of such intent." *Chattem, Inc. v. Provident Life & Accident*

*Ins. Co.*, 676 S.W.2d 953, 955 (Tenn.1984) (*quoting Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 389 (1942)). When an insurer settles or pays a claim with knowledge of a breach of a condition or of a right to assert a defense, it waives the right to assert that defense or breach at any later time. *Allstate Ins. Co. v. Dixon*, 1991 WL 79549 at *4 (Tenn. Ct. App. May 17, 1991) (*citing Westchester Fire Ins. Co. v. McAdoo*, 57 S.W. 409 (Tenn. Ch. App. 1899); *Williams v. Bankers Life Insurance Co.*, 481 S.W.2d 386, 391 (Tenn. Ct. App. 1971)).

However, if the insurer gives proper notice of its reservation of rights to the insured, the insurer will not waive its right to deny coverage at a later time. *Richards Manufacturing Co. v. Great American Insurance Co.*, 773 S.W.2d 916 (Tenn. Ct. App. 1988). For such a reservation of rights to be effective, the notice to the insured "must fairly and adequately inform the insured of the insurer's position." *Allstate*, 1991 WL 79549 at *5 (*citing Richards*, 773 S.W.2d at 919; *Transamerica Insurance Group v. Beem*, 652 F.2d 663 (6th Cir. 1981) (interpreting Tennessee law)). Tennessee has required a reservation of rights to specifically address what rights are being reserved and in what circumstances. *Id.*

GAINSCO responds to Mandrill's waiver argument by pointing out it both initially reserved its right to deny coverage for the underlying suits and then actually did assert its right to deny that coverage. First, GAINSCO issued a reservation of rights notice to Mandrill dated March 6, 2001 (Court File No. 73, Exh. B, Sect. V). This letter states

> Nothing which this insurer may have done or may do hereafter in connection with the investigation or defense of any matters arising out of this incident, or in connection with the handling of any claim or litigation through the courts, including investigation and/or negotiations for settlement, shall be construed or held as a waiver of any of the rights or defenses of this insurer under the above-referenced policy . . .

(*id.*). This reservation clearly meet the standards set out by the cases above for an effective

13

reservation of rights that prevents waiver of the right to deny a claim by settlement of an underlying case.

Further, after a full investigation into the claims, GAINSCO sent Mandrill a "Declination of Indemnity and Defense" letter dated February 15, 2002 (Court File No. 73, Exh. A). This letter explicitly denied coverage, including the duty to defend, under the policy. The Court finds GAINSCO's reservation of rights was effective, and its actual denial of coverage made it clear to Mandrill no matter what its actions in settling the underlying claims might be, it was asserting its right not to defend those suits. The Court finds GAINSCO did not waive its right to deny the duty to defend such that the Court should reconsider its original ruling on that duty.

Accordingly, the Court will **DENY** Defendant Mandrill's motion for reconsideration because Mandrill has not presented any reason justifying relief from the Order denying its motion for summary judgment as to whether GAINSCO is obligated to defend Mandrill against the underlying lawsuits filed by or on behalf of its workers. Fed. R. Civ. P. 40(b)(6).

### IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** GAINSCO's motion for summary judgment (Court File No. 69), will **DISMISS** this action, and will **ORDER** the Clerk of Court to **CLOSE** this case. The Court also will **DENY** Mandrill's motion for relief from order under Fed. R. Civ. P. 60 (Court File No. 70).

An Order shall enter.

/s/ _____

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**